The Honorable, the Judges of the United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Welcome. Ms. Duncan-McKee, please call the first case for argument this morning. Case number 19-2871 from the District of Nebraska. Paul Gillpatrick et al. v. Scott Frakes et al. Okay, Mr. Post, proceed. Good morning. May it please the Court. Like most states, Nebraska regulates the manner in which two people get married. The specific statute here regulates the manner, not who can get married in Nebraska. It applies to all Nebraskans. These inmates do not challenge that statute facially or as applied. Instead, they claim the Constitution compels that these prison officials ignore it. But the statute is the key. If the statute allows the marriage, it can go forward. But if the statute doesn't and the ceremony is not valid, prison officials... Counsel, now normally you go and you get a license and they give you a license and you get married and you don't determine the validity until a long time after that. So why doesn't the fact they have a license almost completely settle the issue here? They got a license, right? They do have a license. You know what license means? The right to do something. Yes. Well, doesn't that settle about every issue in this case? So the question really becomes for these prison administrators, so are they constitutionally required to facilitate something that these inmates do not have a constitutional right to? Don't they presumptively have a constitutional right once they have the license in hand? So they have a right to get married. We don't dispute that. They just don't have a constitutional right to an e-wedding. And so if they were to go... Let's pretend they were able to go to the county clerk's office and do this themselves, right? And get the license. If they were to go in and get the license and tell the county clerk, we're going to have an e-wedding, that license would not necessarily be issued. The license itself requires the minister to put on the license... Counselor, you said the word minister. You said the word minister. Give me a break. Now proceed. Sure, any... Officiate. Go ahead. Whoever's performing the marriage. It requires them to put on the document where the marriage took place because the marriage has to occur in the county where the license was given, right? And so the location actually matters under Nebraska law. And Nebraska's not unique in this. Many, many states have this presence requirement. And it may be a policy decision that the Nebraska legislature makes a different policy choice on given COVID and everything else that's happened this year. They got this license from the right place that they are, right? Well, these inmates are in two different counties. And so they... I can't remember which county they got the license in, but the wedding would have to occur in the county where they got the license from. It doesn't really matter which county, right? It's just the wedding has to occur in that county. Counsel, I'd like to explore whether the Turner test even applies here. And my question is this. So if a state law requires the presence of the parties and the witnesses, what prison policy is implicated here that would trigger a Turner analysis? Right, so that's the issue here. The policy is no longer in play. And so I understand, as Mr. Gooch will point out, the policy was different previously. We haven't appealed on that issue. The policy's been changed. The policy's not at issue. The only thing at issue here is the state law. And so it's our position that Turner just simply doesn't apply. Turner's about the standard that you apply to a prison policy, not about how this court interprets a generally applicable statute. As you can see from the record, the prison officials are not asserting... they're not asserting security concerns with this request. They're not asserting really anything. It's purely on this question of whether state law allows it. And so one thing I want to point out with the district court's order is there's simply no limiting principle. So the district court seems to be saying that these officials have to allow any request as long as inmates arguably have a right to do it. So take it out of this example with an e-wedding. Nebraska, another manner of marriage that Nebraska does not allow is a proxy marriage. Under the district court's opinion, we would have to allow proxy marriage in a prison as well. And so that's part of the issue here is that Turner doesn't apply to this situation. What these inmates should have done all along is file a state declaratory judgment action to determine what this statute means, if there is any ambiguity. But for whatever reason, the inmates insist on not filing one. Go slowly. They want in state court. I read the state trial court's decision. They wanted that appointed. You appealed to Nebraska's Supreme Court and that went back. And then you removed to federal court, right? Absolutely. So I'm glad you asked that question. So in state trial court, they didn't bring the case against the right parties. And so they brought a series of the wrong claims and the wrong parties. And so we had to appeal that to get that cleaned up. And then when it went back down and they amended the complaint, you'll notice that the second amended complaint does not include anything about state law. The second amended complaint is all about a number of federal constitutional claims. Counsel, you went back to the same judge, I assume, under Nebraska law, right? Yes. Okay, so went back to judge, is it Ott or Otte? Ott. Ott, thank you very much. Went back to judge Ott, you knew how he was going to rule, so you wanted to remove, right? Well, I mean, so there's a few issues here. So at that time, these inmates were still seeking a constitutional decision as it related to transportation, as it related to using a phone, all of these other things. And then only after we removed and we got to federal court did they abandon those claims and then the state got summary judgment on those claims. And so there's a lot of history that's transpired since then. Again, removals... Haven't you pretty much waived any right to get this certified back to state court? I mean, you're on the board of waiver, judicial estoppel, almost ethics. When you remove it from state court and then say, oh, it should be sent back to state court now. All right, action. I can appreciate that, but the case is just fundamentally different than it was when the amended complaint was filed in state court. And so we wanted a federal court to rule on the constitutional claims, which it did. But now all that's left is a claim that depends on state law. And so I understand it looks procedurally different than what this court is used to seeing. But we think this question is actually pretty straightforward as it relates to the state law question, which is why I argued the alternative in my brief, which really gets back to the fundamental issue here. If the inmates do not have a right to this particular ceremony because the state of Nebraska gets to make this sort of policy decision on generally applicable state laws about the manner in which you get married. So if the inmates don't have a fundamental right to this particular ceremony, then Turner doesn't apply. None of this comes into the picture. And so that's where we really think the district judge. So what I hear you saying then is that if a requested accommodation is outside the parameters of state law, then there's no duty on the part of the state to articulate the peniological interest. Is that correct? Yes. This isn't like the Sixth Circuit case that Mr. Gooch cited where the question was just whether or not the state should facilitate or affirmatively help the inmates. Here, even if the state did what the inmates are requesting, it's still invalid. So this isn't like where you just go pick up an application or an intention form for them or anything like that. That's really what makes this case different. Again, and I come back to maybe this is a poor analogy, but, for example, in Nebraska, inmates are not allowed the right to vote. So should prison administrators be required to register inmates to vote knowing that the registration is invalid? Well, counsel, I assume a local registration official wouldn't register them. Oh, likely not. When you register in most states, counsel, you fill out. You've got to give an address. In some states, you can't get a P.O. Box. You've got to answer about ten questions. And one of them is, have you ever been convicted of a felony, for example, in Missouri? So they've got a license, right? Exactly, so that's the point. And they couldn't register to vote. I think that analogy is pretty bad. Well, but it actually, I mean, that's the point here, right? Why are prison officials constitutionally required then to take all of those steps knowing on the back end that it's going to get denied? Well, how do you know that for sure? There's a license in hand. It's been issued by a person that has the right to issue the license. When they go back to file that license, somebody's going to have to make a decision whether or not it's appropriate, right? And that's not the prison's job, right? I mean, there's a registrar who ultimately will make that decision. Right, so if they want to, so I mean, that gets kind of back to the wrong parties issue here, right? So if they want to sue somebody about that law, they need to sue that. What they're saying, what they're arguing is that presence doesn't necessarily mean actual physical presence, right? And there's precedent for that in other areas of the law where they allow things to happen by telephone. You know, we've got all kinds of cases that say that corporate actions are not ultra virys because they've acted by conference call or video conference. And they're arguing that that same thing is true here when it comes to presence. And ultimately, that's a decision that someone who is not the warden is going to have to make, right? I mean, that kind of brings it back to what I'm saying, which is exactly why we think the Nebraska Supreme Court should make that decision about whether or not presence. If you hadn't deserted the Nebraska Supreme Court, I'd be very sympathetic to you. Since you deserted them and abandoned, it's on the edge. It's on the edge. Your argument's on the edge, counsel. But let me ask you this broadside. I had my clerk's check. Do you know every time marriage has been before the U.S. Supreme Court, it's won? It's won when Wisconsin said you had to pay child support to get married. It's won Loving v. Virginia. It's won in Obergefell. There's a long way. And that goes back a couple more centuries. Now, you're battling marriage wins. Now, I know that's a broadside. I'm into your rebuttal. But do you have any response to that? So I'll be very, very brief so I can save a little bit of rebuttal. Many of the cases you just listed involved who you get to marry, not the manor. And in many of those cases, they repeat over and over again. No, the Wisconsin is about manor, but go ahead. Because they weren't going to delay it until you paid your child support, counsel. Address the fundamental right to get married. We agree the inmates have the fundamental right to get married. They just do not have a fundamental right to an e-wedding, specifically because Nebraska law, which gets to decide these domestic relations issues, says they do not. Thank you. Okay. You can save rest for rebuttal. Mr. Gooch. Good morning, your honors, and may it please the court. First, the undisputed situation here is that both Nicole Weatherall and Paul Gilpatrick are adult, unmarried, unrelated persons who have exhausted the administrative remedies that are available under both the PLRA and under the exhaustion rules generally. In addition to that, undisputed is that this case was filed by the plaintiffs, and I will tell you candidly by me, incorrectly by alleging against essentially the same defendants in their individual capacity instead of their official capacity. Well, that's fixed by my friend's appropriate and successful appeal. We amend it, so we have the right parties because what's going on here is Ms. Weatherall and Mr. Gilpatrick asked the prison for permission to have a wedding ceremony. They didn't say we want the department to determine the validity of that, but the ceremony, which has its own independent value as a statement of enduring affection and commitment, they asked for that. That seems very fundamental. Once the case was removed to federal court, we did our discovery, and the defendants themselves essentially said, again undisputed, there is no institutional reason to prevent this ceremony. There is no cost. There is no alternative for these two individuals, some other way they can get married. Perhaps there is no institutional reason, but there may be a state law reason, and that is the language of the Nebraska statutes. In that regard, I've got a question for you about your brief. On page 36 of your brief, you state, Gilpatrick and Weatherall assert that the law evolves to accommodate changing realities. I'd like to know what precedent supports the position that the Nebraska Supreme Court would view Nebraska statutes as fluid and evolving rather than having a fixed meaning. I appreciate the question, Judge. What I was trying to say before are the things that are not disputed. None of the Turner factors are disputed. In terms of Nebraska, if you choose to go down this state law rabbit hole, it strikes me that the first place you should go in terms of what does that word mean is to look at it in the context of the rest of the statutes. Counsel, your brief said it evolves to accommodate changing realities. Do you think the Nebraska Supreme Court views the statute that way? I don't know. They've never addressed this statute, but they've addressed lots of other statutes, and they've adopted a series of canons of construction, not the least of which is that they don't ascribe to the legislature the intention of writing a law which is impossible to satisfy. There has to be some limit in terms of absurd result to the way you interpret something. The other thing Nebraska law does is it resists the notion, with no disrespect to you at all, but it resists the notion that you're a legislature and that you should be inserting words into the statute. My friend's argument is that the statute doesn't say presence. It says physical presence, even though I suspect you've each read it and didn't spot that word. There's nowhere where the Nebraska courts have said, well, presence equals physical presence, and so consequently... Counsel, I'm going to interrupt you. Are there Nebraska cases, like there are in other states, that says presence does mean physical presence? There's bound to be such cases. There are. Absolutely there are. But they don't translate across the board because there are also cases where it's crystal clear that presence does not require physical presence, and I cite in my brief the U.S. Supreme Court decision, and there are lots of them, the ones in the First Amendment that choose not to interpret Congress shall make no law abridging the freedom of speech or of the press to include broadcast media. That's not in the First Amendment, but we all, I think, agree it's covered by the First Amendment, and that's a matter of the concept originally adopted evolving to recognize changes in technology. We allow witnesses in federal court and in state court to testify by video conference. Counsel, I don't mean to cut off your argument. In my view, you're getting far afield, and I'm helping you. But let me get back to this very situation. What is the real reason that they don't want to do this? Because, again, if you look at our district courts, all across our circuits, again on this kind of marriage issue, Missouri even had a state statute that says they're supposed to come in and get the license, and the federal district court said that that couldn't be enforced against prisoners. So tell me why you think they're really doing it. Honest to Pete, Judge, I have the faintest idea why they're doing it. Well, have you deposed them and asked them? I did ask them, but what they said, and it's in the record. Director Freight said, we won't authorize the marriage because the lawyers told us that that statute means something. Advice of counsel. Okay, proceed. Advice of counsel. Go ahead. But just so you know, he declined to articulate a correctional justification. Just advice of counsel. That's okay. Proceed. The same people, by the way, who chose to bring the case to federal court. But I do want to answer Judge Erickson's, I'm sorry, I have you wrong, and I just don't know you well enough to call you by name. On my screen, it's the judge who asked about the applicability of Turner. The Nebraska Supreme Court has said at this very same statute, although not using the statute, because they were talking about other states, that even though it says the solemn statement has to be made in front of a magistrate or a minister, they've said, but you know, if there isn't one, we don't care. It's still valid. They've said, the statute says you have to have witnesses, but the case law says, hey, the marriage is valid even if there are no witnesses. The statute says they have to promise to be husband and wife, and yet we know because of Obergefell that they don't have to say that. So if you take that specific language, it is unreasonable to interpret the word presence as mandatory when it's clearly and historically been viewed, to answer your question, Judge Benton, as directory or hortatory. And so consequently, once you go down this, you've become the surrogate Nebraska unicameral, and they want you to insert a word. We want you to not insert a word, but recognize that marriage is fundamental and should be understood to be a good thing, and that, I think, answers, at least from our thinking, the questions asked by you, Judge. And by the way, Turner allows for this exact conversation because the first prong of Turner is whether or not there's a legitimate penological justification and whether there is a fit between that penological justification and the actions of the particular named defendants. Well, as it turns out, one could argue, I think, unsuccessfully and with no credibility that it is a penological justification to abide by all state laws. At that level of generality, of course it is, but how that generality applies to refusing to let these people have a wedding ceremony is a mystery. Counsel, it seems to me that there is a logical gap in your argument. In order for the state to be required to articulate a penological interest, the requested accommodation would actually have to facilitate the constitutional right. So your argument assumes that the requested accommodation would comply with the statute. So I think we necessarily have to determine what the statute requires. And respectfully, Your Honor, I think it's exactly the contrary. If you look at Loving v. Virginia, Virginia had a clear law that said you cannot be married to a person unless they're the same race. The United States Supreme Court said, no, that's not right. The state defined marriage a certain way, and the Supreme Court said the Constitution trumps those state laws. That's what Article VI means. Counsel, I think you might be getting into something which I don't know if this is the case, but perhaps it explains the state's interest in this. Marriage has been federalized by the Supreme Court in certain areas, including race and gender, but it's not been federalized in other areas. And it seems to me that under the Windsor decision, the states still have the ability to require witnesses, the presence of witnesses, et cetera. And, Your Honor, it is a question of balancing. It's a legitimate justification for the plaintiffs to file this lawsuit in state court. But once my friend abandoned state court, those comity and respect for state-federal relationships kind of go by the wayside as a matter of their choice. But even if you put that aside, Your Honor, the fact of the matter is that the Constitution still trumps invalid state laws and where, using Turner's analysis, where they, the government, prohibits completely a fundamental right, and they do so without the slightest justification for it, other than to say that our state law says so, even though it doesn't say so. But counsel, counsel. That's what Turner says. Counsel, it's my understanding that you have not challenged the constitutionality of the statute, and in that case it's presumed to be constitutional. That's true, and I don't have any dispute that the statute as written is constitutional. It's the fiction that we're talking about of the insertion of a word that doesn't exist in the statute. That's, were that word there, then I think there might credibly be some strange constitutional argument. I still think that the Constitution beats the state statute, but putting that aside, why would we challenge a statute that doesn't require physical presence, but only requires presence? It's just silly. Besides, we didn't sue the people who drafted or deal with this. That would have been the clerk or the minister. Instead, we sued the people who said we refuse to allow a ceremony. A ceremony. Not necessarily determining the ultimate validity of the marriage. Frankly, respectfully, I think that's between the minister and God and these two people. I don't think the Department of Corrections has any business trying to decide whether the ceremony is valid for religious purposes. Counsel, you say you're assuming they have a license. They do have a license. No, no, but your argument that you just made, which just lends itself to all sorts of horribles, I won't play with you, but you're assuming that they have a license. That's true. Okay, proceed. Yes, and that's the thing. The state has delegated the responsibility of issuing a license, not to the Department of Corrections, but to the county clerk. That's what the statute says. Another statute we didn't challenge constitutionally. We didn't challenge the Department of Corrections statute that gives them certain authority and doesn't give them other authority because none of those have anything to do with the case. Thank you very much. I appreciate this interesting argument. Because I have just a few seconds left on my clock, I want to tell the court how much I appreciate your staff for getting me into the 21st century and making this work. Thank you to them, the courteous and professional, and thank you for the opportunity to present this argument. Those compliments are appreciated. They've worked very hard in these challenging times. Mr. Post, we're back to you for rebuttal. Thank you. I also want to reiterate the thank you to the staff. It's been very, very helpful. Very simply, the removal was because in the amended complaint, there was no state law claim. It was a federal claim related to issues that have been litigated over and over in federal court, such as transporting inmates. After we removed, and only on cross motions for summary judgment, did these inmates drop those claims, and that's what brings us to where we are now. If they had filed a state declaratory judgment action, as they should have, this would have been resolved years ago by the Nebraska Supreme Court, but these inmates did not. Well, it was all but resolved. Don't you agree? Now, I know that Judge Ott doesn't really make the point, but he almost makes the point that the way you interpret this Nebraska statute is to say that presence means, you know, virtual presence or several other kinds of presence. So, respectfully, we disagree. There's a number of situations that Mr. Gooch referenced. No, no, no, no. Tell me. I'm just trying to interpret Judge Ott's pages 7, 8, 9 in that area. Don't you think that's what he's saying? I do think Judge Ott thought that this was allowed under Nebraska. I don't have those pages in front of me, but I have no reason to disagree with you on that. Right, right. That's a fair reading of it, I think. Go ahead. Yes. We think the issue is if the Nebraska Supreme Court got to the question, they're going to look at a statute that was written in 1866 that said presence. Quite frankly, there was no reason to define virtual or physical presence in 1866. The statute hasn't changed. It's been required. That's been the requirement for over 150 years in the state of Nebraska at this point. And, again, I want to reiterate, and this gets back to the Turner issue, this statute applies to everyone that wants to get married. This is not just an inmate case. And so it applies to military couples. It applies to any host of couples that are trying to get married during COVID right now. And so we get back to, again, there has to be a limiting principle on the expansion of Turner to this sort of situation because with the proxy marriage example I gave, if the district court's order is affirmed, the state would also have to allow proxy marriage by inmates. That's another thing. Did they get a license for that or not? Are they going to get the license or not? The license doesn't... No, you're absolutely wrong, counsel. You get the license. That proves the point. You get the license, and you don't have any idea what's going to be done then. There's also coercion. I won't go into all the state law. I don't have time in a minute. But there's also coercion. That doesn't happen until the ceremony, trust me. One party gets the license, and the coercion happens at the ceremony. So I do think it's quite different. But they don't have to say when they get the license whether they're going to follow the law. That's not part of the... Yeah, right. The license is prima facie valid. You agree. Yeah, the piece of paper they got is... Right. It's a valid piece of paper. I don't know what these inmates told the county clerk. I don't know if they said they were going to do the lawful marriage or not. I mean, they don't have to tell the clerk... And some people get married, like to the military person who's in Afghanistan. They're in Afghanistan. The person's here. They go back and they file it, and nothing ever happens, right? Well, I would dispute that if... No, you can't dispute that. Maybe you've not done a lot of weddings. Some of us have. You file it, and nothing happens. It's entirely... It's possible, I guess. I think that's what we have to... Counsel, isn't that a different question than whether the prison system has to accommodate the action? Exactly. I mean, that's the issue. Whether or not the prison system is constitutionally required. Maybe it'd be a good policy decision, right? But are they constitutionally required? And with that, I see I'm out of time. We would request the state of our question be certified, but if not, the opinion be reversed. Thank you. Okay. Thank you both for your arguments. Case number 19-2871 is submitted for decision by the court. Ms. Duncan-McKee?